NO. 23-15507

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

**CHRISTINE NEVES, COREY PEREZ, and WARREN FORD,**
Defendants-Appellants,

v.

**TAMARA TAYLOR, individually and
on behalf of her minor child, N.B.,**
Plaintiffs-Appellees.

_____

APPEAL
From the United States District Court for the District of Hawai'i
Civil No. 22-00013 HG-KJM

_____

**APPELLANTS' OPENING BRIEF**

_____

ROBERT M. KOHN      6241
Email: robert.kohn@honolulu.gov
PAUL S. AOKI           1286
Email: paoki@honolulu.gov
Deputies Corporation Counsel
Department of the Corporation Counsel
City and County of Honolulu
530 South King Street, Room 110
Telephone: (808) 768-5129, (808) 768-5132

Attorneys for Defendants-Appellants

# Table of Contents

**Page(s)**

Table of Authorities ................................................................. iv

APPELLANTS' OPENING BRIEF ...........................................................1

INTRODUCTION .....................................................................1

JURISDICTIONAL STATEMENT .....................................................2

STATEMENT OF THE ISSUES FOR REVIEW .........................................5

STATEMENT OF THE CASE .........................................................6

    A.    Statement of facts alleged in the SAC .........................................6

    B.    The facts disclosed in the compelled discovery ........................8

    C.    Procedural history ...................................................11

SUMMARY OF THE ARGUMENT ..................................................15

JURISDICTION AND STANDARD OF REVIEW ....................................19

LEGAL STANDARDS FOR QUALIFIED IMMUNITY ...........................20

ARGUMENT.........................................................................23

    I.     The False Arrest Claim Fails Because There Was Probable
          Cause to Arrest N.B. Based on the Threatening Drawing and
          Message, Which Should Not Have Been Sealed from Public
          View and Mischaracterized as a "Cartoon" in the District
          Court's Order. ...........................................................24

    II.    Even If Officer Neves Lacked Actual Probable Cause to
          Arrest N.B., She Is Entitled to Qualified Immunity Because
          She Reasonably but Mistakenly Concluded That Probable
          Cause Was Present. ....................................................28

III.   The District Court Erroneously Applied the Summary
       Judgment Standard, Which Was Not Implicated in the
       Motion to Dismiss. .................................................................33

IV.    The District Court Erred in Denying Qualified Immunity
       for Excessive Force Because the SAC Fails to Identify the
       Unconstitutional Conduct for Each Officer. ...........................37

       A.    The failure to intervene and integral
             participant theories fail. ........................................39

       B.    *Peck*'s double causation requirement is
             not met. ...................................................................45

       C.    Neves Is Entitled to Qualified Immunity. ............46

CONCLUSION .............................................................................51

STATEMENT OF RELATED CASES .........................................53

# Table of Authorities

**Cases**                                                                **Page(s)**

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ............................................................... 16, 27, 28

*Armstrong v. Ashley*,
    60 F.4th 262 (5th Cir. 2023) ...................................................... 31, 37

*Ascon Props., Inc. v. Mobil Oil Co.*,
    866 F.2d 1149 (9th Cir. 1989) ........................................................ 37

*Ashcroft v. al-Kidd*,
    563 U.S. 731, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011) ................................. 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................. *passim*

*Atwater v. City of Lago Vista*,
    532 U.S. 318 (2001) ................................................................ 27-28

*Behrens v. Pelletier*,
    516 U.S. 299 (1996) .............................................................. 2, 4, 34

*Beier v. City of Lewiston*,
    354 F.3d 1058 (9th Cir. 2004) ........................................................ 20

*Boyd v. Benton Cty.*,
    374 F.3d 773 (9th Cir. 2004) ......................................................... 41

*Brooks v. Clark Cty.*,
    828 F.3d 910 (9th Cir. 2016) .......................................................... 4

*Butz v. Economou*,
    438 U.S. 478 (1978) .................................................................. 37

*Carsten v. Inter-Tribal Council of Nev.*,
    599 F. Appx. 659 (9th Cir. 2015) ..................................................... 36

*C.B. v. Sonora*,
    769 F.3d 1005 (9th Cir. 2014) ..................................................... 48, 50

iv

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
710 F.3d 946 (9th Cir. 2013) ...................................................................... 33-34

*City of Tahlequah v. Bond*,
142 S. Ct. 9, 211 L.Ed.2d 170 (2021) ............................................................ 26

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
140 S. Ct. 1009, 206 L.Ed.2d 356 (2020) ...................................................... 45

*Crawford-El v. Britton*,
523 U.S. 574 (1998) ................................................................... 18, 22, 35

*Crowe v. Cty. of San Diego*,
608 F.3d 406 (9th Cir. 2010) ............................................................... 20

*Cunningham v. Gates*,
229 F.3d 1271 (9th Cir. 2000) ........................................................... 17, 30

*District of Columbia v. Wesby*,
138 S. Ct. 577 (2018) ....................................................................... 16, 29

*Dubner v. City & Cnty. of San Francisco*,
266 F.3d 959 (9th Cir. 2001) ................................................................ 25

*E.W. v. Dolgos*,
884 F.3d 172 (4th Cir. 2018) ........................................................... 49-50

*Eaton v. Siemens*,
431 F. App'x 539 (9th Cir. 2011) ......................................................... 4

*Estate of Anderson v. Marsh*,
985 F.3d 726 (9th Cir. 2021) ........................................................... 5, 33

*Evans v. Skolnik*,
997 F.3d 1060 (9th Cir. 2021) ........................................................... 29, 30

*Fazaga v. FBI*,
965 F.3d 1015 (9th Cir. 2020) .............................................................. 49

*Garcia v. Mirabal*,
No. 22-35733, 2023 U.S. App. LEXIS 19069 (9th Cir. July 26, 2023) ........... 51

*Goff v. Ramirez*,
804 F. App'x 478 (9th Cir. 2020) ......................................................... 4

*Gradetech Inc. v. City of San Jose*,
    851 F. App'x 729 (9th Cir. 2021) ........................................................ 4

*Green v. Strickland*,
    No. 20-601, 2022 U.S. Dist. LEXIS 52143 (W.D. La. Mar. 21, 2022) ...... 30, 31

*Hamby v. Hammond*,
    821 F.3d 1085 (9th Cir. 2016) .................................................... 22, 23

*Harlow v. Fitzgerald*,
    457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982) .............................. 34, 35

*Hernandez v. City of San Jose*,
    897 F.3d 1125 (9th Cir. 2018) ........................................................ 4

*Hernandez v. Skinner*,
    969 F.3d 930 (9th Cir. 2020) ...................................... 39, 41, 42, 45

*Hopson v. Alexander*,
    71 F.4th 692 (9th Cir. 2023) ........................................................ 20

*Howell v. Mun. of Anchorage*,
    No. 3:20-cv-00301-SLG, 2022 U.S. Dist. LEXIS 227216
    (D. Alaska Dec. 16, 2022) ........................................................ 40-41

*Hunt v. Davis*,
    749 F. App'x 522 (9th Cir. 2018) .................................................... 4

*Hunter v. Bryant*,
    502 U.S. 224 (1991) ........................................................ 27

*Hyde v. City of Willcox*,
    23 F.4th 863 (9th Cir. 2022) .................................................... 20, 21

*Intercontinental Indus. Corp. v. Wuhan State Owned Indus. Holdings Co.*,
    619 F. App'x 592 (9th Cir. 2015) .................................................... 36

*Ioane v. Hodges*,
    939 F.3d 945 (9th Cir. 2019) ........................................................ 22

*Isayeva v. Sacramento Sheriff's Dep't*,
    872 F.3d 938 (9th Cir. 2017) .................................................... 19, 21

*Ivchenko v. City of Scottsdale*,
    No. 20-17463, 2021 U.S. App. LEXIS 30362 (9th Cir. Oct. 12, 2021) ........... 48

*J.K.J. v. City of San Diego*,
    17 F.4th 1247 (9th Cir. 2021) ................................................................ 4

*Johnson v. Barr*,
    73 F.4th 644 (9th Cir. 2023) ................................................................ 24

*Jones v. Skolnik*,
    671 F. App'x 560 (9th Cir. 2016) ......................................................... 4

*Kaley v. United States*,
    571 U.S. 320, 134 S. Ct. 1090, 188 L.Ed.2d 46 (2014) ..................... 25

*Kamakana v. City & Cty. of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ........................................... 15-16, 24

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018) ..................................................................... 47

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) ....................................................... 25, 26

*Lolli v. Cnty. of Orange*,
    351 F.3d 410 (9th Cir. 2003) .............................................................. 39

*Miller v. Gammie*,
    292 F.3d 982 (9th Cir. 2002) ....................................................... 35-36

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ....................................................... 35-36

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ........................................................................ 2-3

*Moss v. United States Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .............................................................. 31

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2014) ....................................................... 18, 36

*Nicholson v. City of Los Angeles*,
    935 F.3d 685 (9th Cir. 2019) ............................................. 39, 41-43

*Palmer v. Sanderson*,
    9 F.3d 1433 (9th Cir. 1993) .............................................................. 51

*Pearson v. Callahan,*
   555 U.S. 223 (2009) ..................................................................... 22, 30

*Peck v. Montoya,*
   51 F.4th 877 (9th Cir. 2022) ...................................................... *passim*

*Pelletier v. Fed. Home Loan Bank of S.F.,*
   968 F.2d 865 (9th Cir. 1992) ................................................................ 3

*Persian Gulf, Inc. v. BP W. Coast Prods. LLC,*
   225 F. Supp. 3d 1178 (S.D. Cal. 2016) ................................... 18-19, 36

*Pettibone v. Russell,*
   59 F.4th 449 (9th Cir. 2023) ................................................................ 2

*Pintos v. Pac. Creditors Ass'n,*
   605 F.3d 665 (9th Cir. 2010) ............................................................. 24

*Richards v. Cty. of San Bernardino,*
   39 F.4th 562 (9th Cir. 2022) ............................................................. 45

*Roberson v. City of Hawthorne,*
   No. 21-55134, 2023 U.S. App. LEXIS 6872 (9th Cir. Mar. 22, 2023) ........... 43

Roberts v. Springfield Util. Bd.,
   No. 21-36052, 2023 U.S. App. LEXIS 11680 ................................... 35

*Rodriguez v. Cty. of L.A.,*
   No. 2:21-cv-06574-SK, 2023 U.S. Dist. LEXIS 105524
   (C.D. Cal. June 13, 2023) ................................................................. 43

*Schwenk v. Hartford,*
   204 F.3d 1187, 1198 & n.8 (9th Cir. 2000) ...................................... 21

*Sharp v. Cty. of Orange,*
   871 F.3d 901 (9th Cir. 2017) ............................................................. 51

*Smith v. Agdeppa,*
   No. 20-56254, 2023 U.S. App. LEXIS 22954 (9th Cir. Aug. 30, 2023) .......... 21

*State v. Klinge,*
   92 Hawaii 577 (2000) ........................................................................ 27

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007) ............................................................. 31

*Taylor v. Casarez*,
  No. EDCV 09-240-MMM (MAN), 2012 U.S. Dist. LEXIS 200048
  (C.D. Cal. Aug. 17, 2012) ...................................................................... 49

*Tekle v. United States*,
  511 F.3d 839 (9th Cir. 2007) ............................................................. 50

*Tibbetts v. Kulongoski*,
  567 F.3d 529 (9th Cir. 2009) ............................................................. 27

*United States v. Lanier*,
  520 U.S. 259 (1997) ........................................................................... 24

*United States v. Lopez*,
  482 F.3d 1067 (9th Cir. 2007) ........................................................... 25

*United States v. Price*,
  980 F.3d 1211 (9th Cir. 2020) ........................................... 25, 26, 28

*Vanegas v. City of Pasadena*,
  46 F.4th 1159 (9th Cir. 2022) ................................. 16, 25, 28-29, 30

*White v. Pauly*,
  580 U.S. 73, 137 S. Ct. 548, 196 L.Ed.2d 463 (2017) ...................... 51

*Williams v. City of Chicago*,
  733 F.3d 749 (7th Cir. 2013) ............................................................. 29

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ........................................................................... 49

**Statutes**

28 U.S.C.S. § 1291 .................................................................... 2, 4, 19
28 U.S.C.S. § 1331 ............................................................................. 2
29 U.S.C.S. § 794 .............................................................................. 8
42 U.S.C.S. § 1983 .................................................... 2, 32, 37, 40, 44
HRS § 571-84 .................................................................... 11, 12, 15
HRS § 707-715 ................................................................................ 26
HRS § 707-716 ................................................................................ 26
HRS § 707-717 ................................................................................ 26

Cal. Penal Code § 26 ............................................................. 48

**Rules**

USCS Fed Rules Civ Proc R 8 ......................................... 18, 36

USCS Fed Rules Civ Proc R 12 ............................................ 33

USCS Fed Rules Civ Proc R 56 ............................................ 34

USCS Fed Rules App Proc R 4 .............................................. 3

## APPELLANTS' OPENING BRIEF

## INTRODUCTION

One afternoon a student named "K." was handed a graphic drawing depicting a female pointing a gun, with the severed head of another female laying on the ground at her feet. The drawing contained a message stating: "This is for [K.] and [E.]. Stand down Bi---! Yo F**kin days are over NOW." Beneath the feet of the gun holder and the severed head, the message continues: "FAKE to me and DED!" *See* 5-ER-552 (drawing).

K. went home distraught from school that day, January 9, 2020, and her mother asked her what happened. Furious about the death threat, her mother went to the school the next morning and insisted that the student who had created the drawing ("N.B.") be arrested for terrorizing her child. The vice principal called the Honolulu Police Department, and the three police officers arrived shortly thereafter. The female officer, Christine Neves, conducted an investigation and concluded that—based largely on the drawing—there was probable cause to arrest N.B. for terroristic threatening in the second degree. Neves arrested N.B. and took her to the police station, where she was promptly booked and released to the custody of her mother, Tamara Taylor. She was not prosecuted.

Two years later, on January 7, 2022, Taylor and N.B. sued the officers and others, making claims against the officers for false arrest and excessive force. The

complaint referenced the drawing around 30 times, but Plaintiffs moved to place it under seal. The district court judge[1] sealed the drawing and told the officers' counsel that the motion to dismiss they intended to file would be denied.

The officers filed a motion to dismiss based on qualified immunity on June 22, 2022, and nine months later the court denied it as promised. The dismissal order characterized the drawing (sealed from public view) as a "cartoon" and failed to mention any of the threatening words that were a key part of the death threat.

This appeal challenges that order because the threatening drawing and message established probable cause to arrest N.B.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331 to determine Plaintiffs' federal claims brought under 42 U.S.C. § 1983. This Court has appellate jurisdiction under 28 U.S.C. § 1291 over the district court's final determination denying the officers' right to qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996) ("*Mitchell* clearly establishes that an order rejecting the defense of qualified immunity at *either* the dismissal stage *or* the summary judgment stage is a 'final' judgment subject to immediate appeal." (emphasis in original); *Pettibone v. Russell*, 59 F.4th 449, 452 (9th Cir. 2023) ("Because qualified immunity is 'an

---

[1] Senior Judge Helen Gillmor.

immunity from suit rather than a mere defense to liability,' the denial of a motion to dismiss is effectively final—and thus immediately appealable—when the motion to dismiss is based on qualified immunity."), citing *Mitchell* and *Peck v. Montoya*, 51 F.4th 877, 885 (9th Cir. 2022).

This appeal is timely under Federal Rules of Appellate Procedure, Rule 4(a)(1): the order denying qualified immunity was entered on March 31, 2023 (1-ER-15), and the notice of appeal was filed on April 3, 2023 (4-ER-518).

This Court has asked the Appellant Officers[2] to address this Court's jurisdiction under *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 871 (9th Cir. 1992). Dkt. 5 (stating that "an official defendant claiming qualified immunity on a motion to dismiss is entitled to immediate appellate consideration of a limited issue only. That issue is the narrow and purely legal one of whether the facts alleged support a claim of violation of clearly established law.") (cleaned up).

It is unclear whether the rule in *Pelletier* purports to bar appellate review except for the second prong of qualified immunity ("clearly established law") when appealing an order denying a motion to dismiss, where all non-conclusory factual allegations are taken as true. Nevertheless, binding Supreme Court and other Ninth Circuit precedent is contrary: the Ninth Circuit has jurisdiction over both prongs of qualified immunity when appealing a motion to dismiss, and courts

---

[2] Defendants-Appellants Christine Neves, Warren Ford, Corey Perez ("Officers").

can address either prong first. Jurisdiction hinges on whether an appellant is asking the appellate court to make factual determinations. The Officers are not, and thus this Court has jurisdiction to review both the constitutional violation and clearly established prongs, taking all non-conclusory factual allegations as true. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) ("This Court has been careful to say that a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a final decision within the meaning of § 1291.") (Cleaned up, citing *Behrens,* 516 U.S. at 307.); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1131–32 (9th Cir. 2018) (reviewing both prongs of qualified immunity upon a denial of qualified immunity on a motion to dismiss).[3]

---

[3] *See also Goff v. Ramirez*, 804 F. App'x 478, 480–81 (9th Cir. 2020) (addressing both prongs when reviewing district court's denial of qualified immunity at the motion to dismiss stage); *Jones v. Skolnik*, 671 F. App'x 560, 561–62 (9th Cir. 2016) ("We review de novo both the sufficiency of the complaint and the issue whether governing law was clearly established at the time of the alleged violation.") (cleaned up, citations omitted); *Brooks v. Clark Cty.*, 828 F.3d 910, 921–22 (9th Cir. 2016) (district court erred in denying qualified immunity and holding that the excessive force question was distinct from the question of whether the complaint plausibly alleged that the illegality of the conduct was beyond debate); *Hunt v. Davis*, 749 F. App'x 522, 524 (9th Cir. 2018) (reviewing constitutional violation prong in appeal of denial of motion to dismiss against Sheriff Clark); *J.K.J. v. City of San Diego*, 17 F.4th 1247, 1258–59 (9th Cir. 2021) (affirming dismissal of claim based on qualified immunity at motion to dismiss stage, holding: "Prong one of this test is therefore not satisfied, and qualified immunity applies on that basis. Prong two, the clearly established prong, confirms this result."); *Gradetech Inc. v. City of San Jose*, 851 F. App'x 729, 730–31 (9th Cir. 2021) (when reviewing denial of motion to dismiss based on qualified immunity grounds, holding that the amended complaint did not not plausibly plead a claim of First Amendment retaliation under the first prong of the qualified

There are two different standards for reviewing a district court's denial of qualified immunity. A motion to dismiss is based on the facts as alleged in the complaint, whereas a motion for summary judgment turns on the presence or absence of genuine issues of material fact. The district court denied qualified immunity on the Officers' motion to dismiss, but erroneously applied the standard used in two summary judgment cases, *Peck* and *Marsh*.[4] To be clear, the Officers base jurisdiction on the facts as alleged in the second amended complaint (SAC). No summary judgment motion has been filed.

## STATEMENT OF THE ISSUES FOR REVIEW

1.      Whether the district court erred in denying qualified immunity for the false arrest claim by sealing the threatening drawing with a threatening message that was the basis for the probable cause determination, describing it as a "cartoon," and omitting the threatening words in the drawing. *See* 1-ER-15.

---

immunity inquiry."); *Eaton v. Siemens*, 431 F. App'x 539, 541 (9th Cir. 2011) ("Our jurisdiction over this interlocutory appeal is limited to the purely legal issues of whether Eaton's allegations make out an equal protection claim and what law is clearly established") (cleaned up).

[4] *See* 1-ER-15/39 ("Based on the allegations in the Second Amended Complaint and the undeveloped record, qualified immunity at this stage in the proceedings is inappropriate. The record is insufficiently developed. The Court does not have the facts that are necessary to determine qualified immunity concerning the false arrest claims. *Peck v. Montoya*, 51 F.4th 877, 885–86 (9th Cir. 2022) (citing *Estate of Anderson v. Marsh*, 985 F.3d 726, 732 (9th Cir. 2021)").

2. Even if Officer Christine Neves lacked actual probable cause to arrest N.B., she is entitled to qualified immunity because she reasonably but mistakenly concluded that probable cause was present. Plaintiffs knew that N.B. was arrested by the female officer, and artful and conclusory group pleading as to Ford and Perez cannot establish false arrest or excessive force as to them without alleging the specific conduct of each that was an alleged constitutional violation.

3. Whether the district court erred in denying qualified immunity for the false arrest claim by applying the summary judgment standard rather than the motion to dismiss standard. 1-ER-15/39.

4. Whether the district court erred in denying qualified immunity as to all three Officers on the excessive force claim when only one of them handcuffed N.B., and no clearly established case law squarely governs such as would have put Officer Neves on notice that her actions were unconstitutional.

## STATEMENT OF THE CASE

### A. Statement of facts alleged in the SAC

The SAC contains seven causes of actions action against six Defendants. This qualified immunity appeal only involves the two first claims against the three officers: false arrest and excessive force. 3-ER-420 (SAC) ¶¶ 90–105.[5] The SAC alleges: N.B. is a twelve-year old Black girl with a disability who was handcuffed

---

[5] All of the citations in this paragraph refer to the SAC.

and arrested by the Honolulu Police Department ("HPD") officers on January 10, 2020, when she was attending elementary school. (¶ 2). On January 9, 2020, the day prior to her arrest, N.B. had made an offensive drawing[6] together with other classmates, following an incident in which she was bullied by a third student. (¶ 3). During lunch, N.B. with the assistance of three classmates, drew a picture and wrote a message for a student named E.[7] (¶ 37). While N.B. did most of the drawing, the other classmates made suggestions about its content, colored it, and wrote parts of the message. *Id*. Another student took the drawing and gave it to one of E's friends, K, later that day. (¶ 39). K then gave the drawing to a school staff member that day. (¶¶ 4, 39). The next morning, K's parent went to the school upset about the drawing and insisted that the school call the police, which the school vice principal did. (¶¶ 5, 42). The SAC does not allege that any information about the involvement of other students was communicated to the Officers.

Three police officers arrived at the school: Neves, Perez, and Ford. (¶ 45). The responding HPD officers spent several hours at the school that morning: they interrogated N.B. and talked to the complaining parent, who wanted to press charges and have N.B. arrested. (¶¶ 6, 42). N.B. was put in handcuffs, arrested for terroristic

---

[6] The SAC incorporates by reference the drawing, mentioning it around 30 times.

[7] The names of the students are abbreviated to protect their privacy. N.B. is the Plaintiff who made the drawing, she addressed it to "E," and somebody later added "K" as another addressee.

threatening, and put in a police car and driven to the Pearl City Police Station. (¶ 57). The Officers arrested N.B., or allowed her to be arrested, without a reasonable basis for believing that N.B. committed a crime. (¶ 92). N.B. has a disability— attention deficit hyperactivity disorder ("ADHD").[8] (¶ 19) Even though N.B. had a Section 504 plan with the school that the vice principal knew or should have known about, Runge and other school staff failed to communicate N.B.'s disability to HPD and failed to explain the context for her drawings. (¶¶ 46, 141(c)).

## B. The facts disclosed in the compelled discovery

The district court ordered full discovery and position statements regarding the drawing to be filed on September 2, 2022. 1-ER-81 at 1–2. The parties propounded and responded to extensive interrogatory and document requests, and filed position statements regarding discovery on September 2, 2022, attaching their interrogatory responses. 3-ER-227/228/238.

The vice principal (Runge) stated that the drawing "depicts a female holding and pointing a gun, with the severed head of another female laying on the ground at the feet of the gun holder." 3-ER-245. The drawing also contains handwritten text that states: "This is for [Student 1] and [Student 2]. Stand down Bi---! Yo F**kin days are over NOW." *Id*. Beneath the feet of the gun holder and the severed

---

[8] It is estimated that 10% of children between the ages of six and eleven have been with ADHD. *See* https://www.cdc.gov/ncbddd/adhd/data.html.

head, the drawing has text that states: "FAKE to me and DED!" *Id*. The vice principal personally spoke with N.B., showed her the drawing, and asked if she created the drawing. N.B. responded that she created it. 3-ER-245/246. She also stated that she gave the drawing to a third student the day before, asking her to deliver the drawing to the two students identified in the drawing. 3-ER-246.

Officer Neves stated that she conducted an investigation and found that N.B. had committed the offense of terroristic threating in the second degree, based on the drawing and what was written on it, as well as information from the vice principal, the complaining parent, and her daughter. 3-ER-247-249. Neves had no knowledge that any portions were authored by other people. 3-ER-248-249. Neves also stated that she had no knowledge that N.B. had any disability. 3-ER-247/249. She also stated that she did not use force, applying the last lock on the handcuffs, which still made the cuffs too big for N.B., who was able to slip them off at the station. 3-ER-250.

Officer Ford's interrogatory responses made clear that he was not the arresting officer and he made no probable cause determination, did not handcuff N.B., and did not transport her to the police station. 3-ER-250. He had no knowledge regarding authorship, control, and publication of the drawing, nor did he know of N.B.'s disability. *Id*.

9

Officer Perez likewise stated that he was not the arresting officer and made no probable cause determinations, did not handcuff N.B., and did not transport her to the police station. 3-ER-250–251. Like Neves and Ford, he stated that he had no knowledge regarding authorship, control, and publication of the drawing, nor did he know of N.B.'s disability. 3-ER-251.

Ten months later, the district court again ordered the parties to submit position statements because it was still dissatisfied about the discovery that had taken place to date. 1-ER-14 at 1–2. The City informed the Court that seven depositions had already taken place, including both Plaintiffs, the three Officers, and the school's vice principal (Runge) and health aide, and all parties had propounded and responded to multiple rounds of document requests. 3-ER-220/222.

While the district court stated at multiple hearings and in written orders that the drawing had to be sealed because there were questions about the authorship, custody, and publication of the drawing, it was noted that N.B.'s deposition answered those questions. *Id*. at 4. N.B. testified that she drew the figure, but another student added color. *Id*. She wrote all the threatening words, but she did not write the name of the student named "K," and she did not write the "f" swear word, though she named the student who wrote that word. *Id*. She named the student who delivered the drawing and indicated that she wanted it to be delivered.

10

*Id*. She admitted that the one receiving the drawing "might be scared by the drawing." *Id*. She admitted that the word "ded" means "dead." *Id*. at 5–6. And she also admitted that she did not convey any information about co-authors to any school authority at any time before she was arrested. *Id*. at 6. The school's vice principle confirmed in her deposition that co-authors were not mentioned. *Id*.

### C.    Procedural history

The original complaint was filed on January 7, 2022. 1-ER15, 16. On May 12, 2022, Plaintiffs moved to expunge the phrase "death threat" from a filing by Defendant Runge that objected to the characterization of the drawing as merely "offensive." 3-ER-460/472/480-481. The district court heard the motion on May 23. 1-ER-84, 2-ER-142. Plaintiffs argued that HRS § 571-84 prevented the State and police from talking about or releasing the drawing. 2-ER-149. The City informed the Court that it intended to file a motion to dismiss, but was "hamstrung" by Plaintiffs because it wanted to describe the drawing the same way it was publicly described in a November 9 article. 2-ER-150.[9] Counsel also noted that Defendants would be prejudiced if they were "barred from describing or

---

[9] *See* https://www.civilbeat.org/2021/11/hpd-threatening-drawing-of-a-gun-and-severed-head-led-to-10-year-olds-arrest/. While Plaintiffs described the drawing to the media as merely "offensive," the interim police chief called this description "extremely misleading." "To be clear, the drawing was a graphic drawing of a girl holding and pointing a gun with a severed head at her feet. Your client also wrote a clear message addressed to two classmates by name, using foul language: 'Stand down B**ch! Yo F**kin days are over NOW' and 'Fake to me And DED.'").

otherwise referencing the document in their pleadings, thereby obstructing the threatening nature of the drawing and limiting defendants to plaintiffs' vague and watered down description of the drawing." 2-ER-151. The Court asked for a description of the City's motion to dismiss, and the City responded: "Plaintiff claims that the student was arrested without a reasonable basis for believing that the student committed a crime. And the drawing clearly shows to the contrary." 2-ER-151–152. The Court stated that it did not "want to waste time with a motion to dismiss with these kinds of facts." 2-ER-156–157. The City responded that the incorporated-by-reference drawing in its motion to dismiss rebuts the conclusory allegations about the false arrest claim. 2-ER-154–155. If the City filed such a motion, the Court said it would "deny it summarily." 2-ER-157. The Court added that "there are depositions to be taken….[Y]ou folks need to tie down your facts rather than trying to get rid of it on a motion to dismiss, which I'm telling you is not going to fly." 2-ER-158. "[I]t's very likely [at] this point, if you were to file a motion for qualified immunity, I would be saying exactly what I'm saying: Don't know enough about what is being alleged." 2-ER-159. "I've got a bunch of allegations that are – you folks need to do some discovery. You really do. And I think you need to do some discovery before you can move for qualified immunity." *Id.* "I think that a motion to dismiss would be a lot more helpful after

we have some discovery. Because without any kind of clarity, I just don't see how a motion to dismiss would succeed." 2-ER-165.

The Officers filed motions to dismiss the SAC on June 22, 2022, and a simultaneous motion for in camera review of the drawing (lodged with the Court as Exhibit A) and to file the drawing publicly. 3-ER-374/390. The Court set a hearing on the motion to unseal the drawing for July 7, 2022, and at the hearing on these motions, the Officers' counsel stated that "courts favor openness. And our jurisdiction dictates documents should be filed publicly. The burden of convincing this Court otherwise is plaintiff's to bear and there must be a compelling reason for doing so." 2-ER-172/175. Further, "the second amended complaint indicates that the plaintiff was the primary author. Paragraph 37 indicates that other students merely colored in and provided suggestions on what to write. And the opposition appears to concede that N.B. was the primary author by contending that the drawing should not be disclosed because it is, quote, a manifestation of N.B.'s disability." 2-ER-176. The Court stated, "I don't think that we are at a place, without discovery, where we can actually put this forward as anything other as something that is disputed in all these ways. And so what's clearly needed here is discovery. And so in order for me to rule on this motion, we must move forward with discovery." 2-ER-185.

The Court issued a minute order later that day, stating: "In order for the Court to rule on the Motion, further discovery is needed." 1-ER-81. As ordered, all parties conducted written discovery and attached interrogatory responses to the position statements filed on September 2, 2022. 3-227/228/238. A hearing was held on the Officers' motion to file the drawing publicly on September 28 (1-ER-15/19), and the motion was denied. 1-ER-74/75. At the hearing the Court stated that it did not intend to release a picture to the public because there were factual disputes about the drawing. 4-ER-488–489. The Court stated that it could not consider qualified immunity without more discovery. 4-ER-496-497. Even though the Officers had filed a motion to dismiss seeking qualified immunity, the Court stated that discovery should proceed without any limits. 4-ER-515.

The Officers' motion to dismiss was heard on December 5, 2022. 1-ER-19; 2-ER-111. The Court issued its order denying qualified immunity four months later on March 31, 2023 (nine months after the motion was filed). 1-ER-15. In the early months of 2023, all of the individual parties were deposed. 3-ER-220/222.

The Officers filed their notice of appeal on April 3, 2023 (4-ER-518). The parties agreed to stay proceedings pending appeal, and submitted a proposed written stipulation to the court for approval on May 11, 2023. *See* Cir. Dkt 13-1 at 5. The Court rejected the stipulation and ordered that discovery proceed. 1-ER-12/13. Pretrial and trial deadlines were then set. 1-ER-2; 1-ER-8.

## SUMMARY OF THE ARGUMENT

1.       There was probable cause to arrest N.B. based on the threatening drawing. It depicted a female holding a gun, with a severed head of another female at her feet, and the message on the drawing was also threatening: "This is for [K.] and [E.]. Stand down Bi---! Yo F**kin days are over NOW." 3-ER-238/245/247/ 249; 5-ER-552. Beneath the feet of the gun holder and the severed head, the message continues: "FAKE to me and DED!" *Id*.

The terroristic threat is a graphic drawing and writing that is the *sine qua non* of the case.  Without the drawing addressed to a student ("K," whose name appears on the drawing), she would not have told her mother she was upset. Without the mother's learning about the drawing, she would not have gone to the school to complain and insist on pressing charges against N.B. Without the drawing, N.B. would not have been arrested.  Plaintiffs described the drawing to the media as merely "offensive," but the interim police chief called this characterization "extremely misleading." 3-ER-238/242 & n.1. "To be clear, the drawing was a graphic drawing of a girl holding and pointing a gun with a severed head at her feet." *Id*.

The district court sealed the drawing even though it was an integral part of the SAC (which mentioned the drawing around 30 times and thereby incorporated it by reference), and even though there was no legal basis to seal it, given the

15

strong presumption in favor of public access to court records. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

Having sealed the drawing central to the case, the court then took the liberty of denying qualified immunity by characterizing it multiple times as a "cartoon" (1-ER-15/16/20/30/39), a word with comic connotations. But neither K. nor her mother thought it was a joke. The vice principal and the mother-child and Officer Neves all considered it a threat. 3-ER-238/245–249.

2. Even if Officer Neves lacked actual probable cause to arrest N.B., she is still entitled to qualified immunity because she reasonably but mistakenly concluded that probable cause was present. *District of Columbia v. Wesby*, 138 S. Ct. 577, 591 (2018) (cleaned up). Qualified immunity is based on the information known to the arresting officer at the time. *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987). *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1166 (9th Cir. 2022) ("Even absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of clearly established law and the information the…officers possessed.") (citation omitted). The doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. There is an accommodation for reasonable error because officials should not err always on the

side of caution. This is especially true for police officers called to schools following a dangerous incident: we all live in a post-Uvalde world now.

Plaintiffs knew before filing suit that that N.B. was arrested, handcuffed, and driven to the police station by the *female* officer (Christine Neves), and artful group pleading as to the male officers (Ford and Perez) as to false arrest and excessive force cannot establish liability as to them without determining the specific conduct of each officer that was an alleged constitutional violation. A complaint may not lump multiple defendants together so as to evade qualified immunity. When suing more than one defendant, it must differentiate the allegations and inform each defendant separately of the allegations surrounding his alleged conduct. *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (Courts analyzing qualified immunity are required to make an "individualized analysis" of the acts of each individual defendant.). The SAC lacks such specificity.

3.      The district court erroneously applied the summary judgment standard, which was not implicated in the Officers' motion to dismiss the SAC. The legal standard for a motion to dismiss focuses on the facts alleged in the complaint, including all reasonable inferences. A summary judgment motion, on the other hand, turns on whether there are any genuine disputes as to material facts, viewing the record in the light most favorable to the nonmoving party.

17

The Officers filed a motion to dismiss the SAC. They have never filed a motion for summary judgment. Yet the district court denied qualified immunity because it concluded the record is insufficiently developed (citing two summary judgment cases), thereby applying the summary judgment standard rather than the motion to dismiss standard. *See* 1-ER-15/39.

4.     The district court erred by conditioning the officers' filing of their motion to dismiss on conducting substantial discovery but then ignoring the favorable facts that the discovery revealed. As soon as the original complaint was filed on January 7, 2022, the Officers were entitled to file a motion to dismiss based on qualified immunity because it is an immunity from suit, not a defense. The Officers attempted to do so, but the district court blocked the process continuously for well over a year, until finally issuing its order denying their motion to dismiss the SAC on March 31, 2023. The court's stated basis for the delay was that it wanted discovery to proceed, even though the Supreme Court has long held that an official can seek qualified based on the complaint as filed, without having to undergo the burden of discovery. *See Crawford-El*, 523 U.S. 523 U.S. 574, 598 (1998) (District court should resolve the "threshold" question of immunity before permitting discovery); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("The Supreme Court has stated…that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it."); *Persian*

18

*Gulf, Inc. v. BP W. Coast Prods. LLC*, 225 F. Supp. 3d 1178, 1180 (S.D. Cal. 2016) ("The unambiguous directive in *Iqbal* and *Mujica* does not allow the court discretion to order pre amendment plausibility discovery. The Plaintiffs are not entitled to discovery in order to allege sufficient facts to nudge its claim across the line from conceivable to plausible.") (cleaned up).

Once the Officers claimed qualified immunity, the burden was on the plaintiffs to prove that the right was violated; and that the right was clearly established. *Isayeva*, 872 F.3d at 946. The Court's ongoing denial of qualified immunity was amplified by its Catch-22 insistence on discovery before ruling on the motion to dismiss, and then disregarding the discovery that belied allegations in the SAC. The discovery showed that Christine Neves was the investigating officer who made the probable cause determination (3-ER-238/247–249), whereas the SAC conclusorily alleges that Defendants did this as a group. *See* 3-ER-420 ¶¶ 2, 8, 19]. The discovery also showed that the Officers had no knowledge of the events of the previous day, other than the drawing that had been delivered to the vice principal and the victim's mother who insisted on filing charges. *See* 3-ER-238/ 248–250. Indeed, the SAC does not allege that they had such knowledge.

## JURISDICTION AND STANDARD OF REVIEW

The Ninth Circuit has "jurisdiction under 28 U.S.C. § 1291 to review interlocutory appeals of the denial of qualified immunity, and has pendent

appellate jurisdiction to review the claim against the municipal defendants because resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent issue." *Hyde v. City of Willcox*, 23 F.4th 863, 869 (9th Cir. 2022) (cleaned up).

The Ninth Circuit reviews "de novo a denial of a motion to dismiss based on qualified immunity, accepting as true all well-pleaded allegations of material fact and construing them in the light most favorable to the non-moving party. A complaint should be dismissed if it fails to include enough facts to state a claim to relief that is plausible on its face. A complaint's claims are plausible when the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (cleaned up).

The Ninth Circuit assumes that plaintiff's version of the facts is the correct one, and analyzes the qualified immunity question under that set of facts." *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023) (cleaned up).

## LEGAL STANDARDS FOR QUALIFIED IMMUNITY

The qualified immunity analysis is claim-specific. *See Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) (A government official is entitled to qualified immunity as to each distinct claim that satisfies the standard); *see also Crowe v. Cty. of San Diego*, 608 F.3d 406, 427 (9th Cir. 2010) (analyzing qualified immunity "[f]or each claim"). The failure to state a claim is "part and parcel of the

qualified immunity analysis." *See Schwenk v. Hartford*, 204 F.3d 1187, 1198–99 & n.8 (9th Cir. 2000).

The Supreme Court's decisions contain issue-framing statements indicating that a constitutional tort plaintiff is required to plead facts sufficient to establish the inapplicability of the qualified immunity defense. *See Iqbal*, 556 U.S. at 677; *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

"To determine whether an officer enjoys qualified immunity, the court asks, in the order it chooses, (i) whether the alleged misconduct violated a constitutional right and (ii) whether the right was clearly established at the time of the alleged misconduct. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Plaintiffs must point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful." *Hyde*, 23 F.4th at 869. "The Supreme Court has repeatedly stressed that courts must not define clearly established law at a high level of generality." *Smith v. Agdeppa*, No. 20-56254, 2023 U.S. App. LEXIS 22954, at *16 (9th Cir. Aug. 30, 2023) (cleaned up).

"Once the official pleads qualified immunity, the burden is on the plaintiff to prove two elements: (1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." *Isayeva v. Sacramento*

*Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017) (citations omitted).

"If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity. On the other hand, if the court determines that the alleged facts establish a constitutional violation, the court proceeds to part two of the test to determine whether the right at issue was clearly established." *Ioane v. Hodges*, 939 F.3d 945, 950 (9th Cir. 2019) (cleaned up). Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "Focusing on the objective legal reasonableness of an official's acts avoids the unfairness of imposing liability on a defendant who could not fairly be said to know that the law forbade conduct not previously identified as unlawful." *Crawford-El v. Britton*, 523 U.S. 574, 590–91 (1998) (cleaned up).

"To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that *what he is doing* violates that right." *Hamby v. Hammond*, 821 F.3d 1085, 1090–91 (9th Cir. 2016) (Supreme Court citations omitted). "Although a plaintiff need not find "a case directly on point, existing precedent must have placed the constitutional question beyond debate." *Hamby*, 821 F.3d at 1091 (cleaned up). "That is, existing precedent must have placed beyond debate the unconstitutionality of the officials' actions, as those

22

actions unfolded in the specific context of the case at hand." *Id*. (cleaned up). Hence, a plaintiff must prove that precedent on the books at the time the officials acted would have made clear to them that their actions violated the Constitution." *Id*. (cleaned up).

## ARGUMENT

The terroristic threat is a graphic drawing and writing that is the *sine qua non* of the case. 3-ER-238/242. Without the drawing addressed to a student named "K," whose name appears on the drawing, she would not have told her mother she was upset. *Id*. Without the mother's learning about the drawing, she would not have gone to the school the next day to complain and insist on pressing charges against N.B. *Id*. Without the drawing, N.B. would not have been arrested. While Plaintiffs described the drawing to the media as merely "offensive,"[10] the interim police chief called this characterization "extremely misleading.[11] *Id*. "To be clear, the drawing was a graphic drawing of a girl holding and pointing a gun with a severed head at her feet." 3-ER-242/243.

---

[10] https://www.civilbeat.org/2021/10/police-handcuffed-and-detained-ten-year-old-student-over-offensive-drawing-lawyers-say/.

[11] https://www.civilbeat.org/2021/11/hpd-threatening-drawing-of-a-gun-and-severed-head-led-to-10-year-olds-arrest/.

## I. The False Arrest Claim Fails Because There Was Probable Cause to Arrest N.B. Based on the Threatening Drawing and Message, Which Should Not Have Been Sealed from Public View and Mischaracterized as a "Cartoon" in the District Court's Order.

The SAC alleges false arrest under the Fourth and Fourteenth Amendments. 3-ER-420/421/441. The Fourteenth Amendment claim fails as a matter of law because the claims are more properly brought under the Fourth Amendment. "If a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 271 n.7 (1997) (cleaned up).

"In any case involving probable cause or the invocation of qualified immunity as a defense, [the Ninth Circuit] must carefully consider the facts that led to the action in question." *Johnson v. Barr*, 73 F.4th 644, 647 (9th Cir. 2023). The probable cause determination cannot be defeated by wrongfully sealing the drawing that formed the basis for probable cause. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) ("Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point.") (citation omitted). The presumption is even stronger when the document is part of a dispositive motion, as it was here. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678–79 (9th Cir. 2010) (explaining that a court may not rely on "hypothesis or conjecture" in ruling on a motion to seal).

24

Probable cause existed for N.B.'s arrest, which defeats the Fourth

Amendment false arrest claim.[12] "Under the Fourth Amendment, a warrantless

arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th

Cir. 2007). To state such a claim, a plaintiff must allege facts showing that "the

arrest was without probable cause or other justification." *Dubner v. City & Cnty. of

San Francisco*, 266 F.3d 959, 964–965 (9th Cir. 2001). "Police may arrest a

suspect if under the totality of circumstances known to the arresting officer, a

prudent person would have concluded that there was a fair probability that the

arrestee had committed a crime." *United States v. Price*, 980 F.3d 1211, 1225 (9th

Cir. 2020) (cleaned up). "Probable cause to arrest exists when there is a fair

probability or substantial chance of criminal activity by the arrestee based on the

totality of the circumstances known to the officers at the time of arrest." *Vanegas*,

46 F.4th at 1164 (cleaned up). This "is not a high bar." *Id.*, quoting *Kaley v. United

States*, 571 U.S. 320, 338 (2014).

N.B.'s drawing with a message is referenced multiple times in the SAC and

is thus incorporated by reference and can be considered on a motion to dismiss.

*Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). N.B. drew the threatening

picture of the female holding a gun with the severed head at her feet and wrote the

---

[12] Hawaii, like a majority of states, has no minimum age for prosecutions. *See* https://www.nga.org/publications/age-boundaries-in-juvenile-justice-systems/.

threatening words in the message. The SAC alleges that "N.B. did most of the drawing" but that others "made suggestions about its content, colored it, and wrote parts of the message." 3-ER-420 ¶ 37. The drawing was delivered to K., who delivered it to the school staff the same day. *Id*. ¶¶ 39, 40.

But the SAC does *not* allege that the Officers, who arrived the next day, knew about the minor role played by other students.[13] Probable cause is based on the totality of circumstances known to the arresting officer, *Price*, 980 F.3d at 1225, and "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah*, 142 S. Ct. at 11 (cleaned up).

Officer Neves arrested N.B. for terroristic threatening in the second degree, a misdemeanor.[14] Because the drawing/letter was created by N.B. and delivered to K., it was communicated to the latter as is required for a terroristic threatening

---

[13] Indeed, the discovery ordered by the district court confirms that none of the Officers had such knowledge. See 3-ER-238/248-251.

[14] HRS § 707-715 defines terroristic threatening, in pertinent part as follows:

> A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person… (1) with the intent to terrorize, **or in reckless disregard of the risk of terrorizing, another person**…. (emphasis added).

HRS § 707-717 defines terroristic threatening in the second degree:

> (1) A person commits the offense of terroristic threatening in the second degree if the person commits terroristic threatening other than as provided in section 707-716. (2) Terroristic threatening in the second degree is a misdemeanor.

charge. The fact that there may have also been probable cause to arrest another student does not change the probable cause analysis as to N.B. Under Hawaii law, "actual terrorization is not a material element of the offense of terroristic threatening. In fact, to be subject to prosecution for terroristic threatening, a defendant need not communicate the threat directly or indirectly to the target of the threat, but may communicate it to a third party. Simply put, the offender need not cause a result." *State v. Klinge*, 92 Hawaii 577, 585 (2000) (cleaned up).

The district court's order denying qualified immunity mischaracterized the drawing as a "cartoon" and omitted all the threatening words. However, on appeal such characterizations and omissions carry no weight, as this Court's review is de novo, including the drawing/message that is central to the allegations against the Officers. After all, the drawing is the sine qua non of this lawsuit: there would have been no arrest without it.

Qualified immunity's "accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (cleaned up); *Tibbetts v. Kulongoski*, 567 F.3d 529, 539–40 (9th Cir. 2009) (same, and stating that "qualified immunity affords government officials the benefit of the doubt in close calls"); *see also Anderson*, 483 U.S. at 641 ("[O]fficials who act in ways they reasonably believe to be lawful – should not be held personally liable.") (citation omitted); *Atwater v.*

27

*City of Lago Vista*, 532 U.S. 318, 367 (2001) (quoting *Anderson*, which "allays any concerns about liability or disincentives to arrest.").

Allowing police officer to err on the side of caution is especially applicable in our post-Uvalde world where officers can be faulted (or indeed sued) not only for their actions, but also for their failures to act.[15]

## II. Even If Officer Neves Lacked Actual Probable Cause to Arrest N.B., She Is Entitled to Qualified Immunity Because She Reasonably but Mistakenly Concluded That Probable Cause Was Present.

Probable cause is based on the facts known to the arresting officer at the time, and only requires "a fair probability that the arrestee had committed a crime." *Price*, 980 F.3d at 1225. Officer Neves, the investigating and arresting officer, had probable cause based on the terroristic drawing and message, delivered to K., and then delivered to the vice principle the day before. Neves knew that K. and her mother were very disturbed by the drawing, and that the vice principle was concerned. Neves did *not* know that any other students were slightly involved in the creation of the drawing the day before, and the qualified immunity analysis looks to the information the officers possessed. *See Anderson*, 483 U.S. at 641 (1987); *See Anderson*, 483 U.S. at 641; *Vanegas*, 46 F.4th at 1166 ("Even absent

---

[15] *See* https://www.kxan.com/news/texas/uvalde-school-shooting/more-uvalde-survivors-families-sue-school-district-state-and-local-officers/#:~:text=UVALDE%2C%20Texas%20(Nexstar)%20%E2%80%94,and%20take%20down%20the%20gunman.

probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of clearly established law and the information the…officers possessed.") (citation omitted).

"In considering what constitutes clearly established law for purposes of qualified immunity, the Supreme Court has taken a narrow approach. A government official violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Evans v. Skolnik*, 997 F.3d 1060, 1066 (9th Cir. 2021) (cleaned up). "The focus is on whether the officer had fair notice that her conduct was unlawful." *Id*. (cleaned up). "Existing precedent must have placed the statutory or constitutional question beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (cleaned up).

Courts analyzing qualifying immunity "start by defining the circumstances with which the officers were confronted." *Wesby*, 138 S. Ct. at 590 (cleaned up). "Even assuming the officers lacked actual probable cause to arrest, the officers are entitled to qualified immunity because they reasonably but mistakenly concluded that probable cause was present." *Id*. at 591 (cleaned up).[16] "The Supreme Court

---

[16] "This concept is often called "arguable probable cause." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013) (citation omitted).

has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality. In short, qualified immunity gives government officials breathing room to make reasonable but mistaken judgments." *Evans*, 997 F.3d at 1067 (cleaned up). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. st 231 (cleaned up). "So, it's not enough that the legal answer be suggested by then-existing precedent; the answer must be so well defined that the legal principle clearly prohibits the officers' conduct in the particular circumstances before them." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1166 (9th Cir. 2022) (cleaned up).

Plaintiffs knew that N.B. was arrested by the female officer (Neves),[17] and artful and conclusory group pleading as to Ford and Perez cannot establish false arrest as to them without determining the specific conduct of each officer that was an alleged constitutional violation. *See Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (Courts analyzing qualified immunity are required to make an "individualized analysis" of the acts of each individual defendant.). "Courts are not

---

[17] "[A] plaintiff cannot be allowed to rest on general characterizations, but must speak to the factual particulars of the alleged actions, at least when those facts are known to the plaintiff." *Green v. Strickland*, No. 20-601, 2022 U.S. Dist. LEXIS 52143, at *13 (W.D. La. Mar. 21, 2022) (citation omitted).

required to make unreasonable inferences or unwarranted deductions of fact to save a complaint from a motion to dismiss." *Moss v. United States Secret Serv.*, 572 F.3d 962, 971 (9th Cir. 2009). A complaint many not "merely lump multiple defendants together"; plaintiffs must "differentiate their allegations when suing more than one defendant…and inform each defendant separately of the allegations surrounding his alleged participation." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (citation omitted). "Qualified immunity protects the law enforcement defendants so long as their individual conduct did not violate clearly established constitutional rights.…We do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the illegal conduct is specifically pled." *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (cleaned up). "This pleading structure—lumping all defendants together and asserting identical allegations as to each, without distinction—largely prevents the Court from discerning which defendants are allegedly responsible for which allegedly unlawful actions." *Green v. Strickland*, No. 20-601, 2022 U.S. Dist. LEXIS 52143, at *10 (W.D. La. Mar. 21, 2022) (citation omitted.)

Although the SAC repeatedly alleges that N.B. was arrested by the Officers, collectively,[18] such conclusory allegations—not specific as to what any of the Officers did—do not satisfy *Iqbal/Twombly* pleading standards, and in fact Ford and Perez did not arrest N.B., nor did they make any probable cause determinations regarding her arrest.[19] Paragraph 92 alleges that the Officers "arrested N.B., or allowed her to be arrested," but this is insufficient to establish a constitutional violation. "One does not subject someone to a deprivation of a constitutional right—or cause someone to be subjected to such a deprivation— simply by watching others violate the Constitution. To be liable under section 1983, a defendant official must be more than a mere bystander." *Peck*, 51 F.4th at 889. "Liability may not be imposed based on a team effort theory that would allow the jury to lump all the defendants together, rather than require it to base each individual's liability on his own conduct." *Id.* at 890 (cleaned up).

Given that Ford and Perez did not arrest N.B. or make any probable cause determinations regarding her arrest, qualified immunity shields them from the false arrest claim.

---

[18] 3-ER-420 ¶¶ 2, 8, 19, 92.

[19] 3-ER-238/250-251. The SAC 3-ER-420 ¶ 8 alleges: "N.B. commented to a school nurse that she wondered what spending one day in jail would be like. After the officers heard about the comment, they got upset and handcuffed and arrested N.B." This does not plausibly allege a constitutional violation because it insinuates that the only reason for the arrest was that comment, which conveniently ignores the threatening drawing and message at the heart of the SAC.

32

**III.** **The District Court Erroneously Applied the Summary Judgment Standard, Which Was Not Implicated in the Motion to Dismiss.**

The district court erred as a matter of law by denying the Officers qualified immunity as to the false arrest claim by applying the summary judgment standard. The court reasoned as follows:

> Based on the allegations in the Second Amended Complaint and the **undeveloped record**, qualified immunity at this stage in the proceedings is inappropriate. The **record is insufficiently developed. The Court does not have the facts that are necessary to determine qualified immunity concerning the false arrest claims.** *Peck v. Montoya*, 51 F.4th 877, 885–86 (9th Cir. 2022) (citing *Estate of Anderson v. Marsh*, 985 F.3d 726, 732 (9th Cir. 2021)).

1-ER-15/39 (emphasis added).

The court was mistaken: the "undeveloped record" as to the "facts" is not a relevant inquiry on a motion to dismiss, in which all facts are derived from the complaint. The *Peck* and *Anderson* cases cited by the Court are, by contrast, summary judgment cases. When officials seek qualified immunity in a motion to dismiss, to survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (cleaned up). "A claim is facially plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable." *Id.* "When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral,*

*Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). "However, the court need not accept as true conclusory legal allegations cast in the form of factual allegations." *Iqbal*, 556 U.S. at 678.

On a motion for summary judgment, by contrast, the allegations in the complaint drop out of the analysis, as the Supreme Court explained:

> [T]he legally relevant factors bearing upon the *Harlow* question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness." On summary judgment, however, the plaintiff can no longer rest on the pleadings, see Fed. Rule Civ. Proc. 56, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the *Harlow* inquiry.

*Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

The district court's conflation of a motion to dismiss with a motion for summary judgment has a long and unfortunate backstory. The lawsuit was filed in January 2022. At a status conference in May 2022, the Officers' counsel announced his intention to file a motion to dismiss based on qualified immunity (2-ER-142/151/158), but the court stated that it would "deny it summarily." 2-ER-157. The court told counsel that "you folks need to tie down your facts rather than trying to get rid of it on a motion to dismiss, which I'm telling you is not going to fly." 2-ER-158.

The court reiterated the need for discovery at a July 7, 2022 hearing: "I don't think that we are at a place, without discovery, where we can actually put this

forward as anything other as something that is disputed in all these ways. And so what's clearly needed here is discovery.…[I]n order for me to rule on this motion, we must move forward with discovery." 2-ER-172/185. The court's minute order later that day ordered the parties to file "Statements of their positions with respect to discovery" by September 2, 2022. 1-ER-80/82. Despite the Officers' renewed claim of qualified immunity, the magistrate noted on August 23, 2022, that "the district court has already exercised its discretion and ordered the parties to proceed with discovery." 1-ER-76/78-79. The parties submitted their statements regarding discovery on September 2, attaching discovery responses and declarations. 3-ER-227/228/238.

By the time the district court issued its order denying the Officers' motion to dismiss on March 31, 2023, nine months after the motion had been filed, the Officers had all been deposed (3-ER-220/222, in further denial of their entitlement to immunity from suit and discovery. *See Crawford-El*, 523 U.S. at 598 (stating that district court should resolve the "threshold" question of immunity before permitting discovery), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Roberts v. Springfield Util. Bd.*, No. 21-36052, 2023 U.S. App. LEXIS 11680, at *3 (9th Cir. May 12, 2023) (citing *Britton* and *Harlow*). "A litigant is…entitled to a ruling on a motion to dismiss on the pleadings based on official immunity *before* the commencement of discovery." *Miller v. Gammie*, 292 F.3d 982, 987

35

(9th Cir. 2002), vacated on other grounds, 335 F.3d 889, 892 (9th Cir. 2003). "The Supreme Court has stated…that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it.") *Mujica*, 771 F.3d at 593 (9th Cir. 2014); "The unambiguous directive in *Iqbal* and *Mujica* does not allow the court discretion to order pre amendment plausibility discovery. The Plaintiffs are not entitled to discovery in order to allege sufficient facts to nudge its claim across the line from conceivable to plausible." *Persian Gulf*, 225 F. Supp. 3d at 1180 (cleaned up).[20] Even after all the individual parties had been deposed, the district court insisted that more discovery implicating the Officers take place. 1-ER-12/13; 2-ER-92/100. This was despite the fact that none of the parties had expressed any interest in conducting the discovery that the court wanted to take place. 2-ER-92 *passim*. *See id*. Despite having compelled full discovery including depositions, the court expressed no interest in the fruits of that discovery.[21]

---

[20] *Persian Gulf* added in footnote 1: "Plaintiff claims that the Ninth Circuit recognizes that district courts may still order early discovery (citing [*International*] *Indus. Corp.*, 619 F. App'x 592, 595 (9th Cir. 2015), and *Carsten*, 599 F. Appx. 659, 660 (9th Cir. 2015).) In both of these cases the Ninth Circuit granted jurisdictional discovery, not plausibility discovery." (cleaned up).

[21] *See* 3-ER-220/223–224: N.B. testified in her deposition that she drew the figure, but another student added color. She wrote all the threatening words, but she did not write the name of the student named "K," and she did not write the "f" swear word, but named the student who wrote that word. She named the student who delivered the drawing and indicated that she wanted it to be delivered. *Id*. She admitted that the one receiving the drawing "might be scared by the drawing." She admitted that the word "ded" means "dead." She admitted that she did not convey

## IV. The District Court Erred in Denying Qualified Immunity for Excessive Force Because the SAC Fails to Identify the Unconstitutional Conduct for Each Officer.

In "§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The SAC violated this commandment by lumping the three Officers together, without identifying the particular conduct of each one that was unconstitutional. *See* 3-ER-420 ¶ 100 (alleging that "Defendants Neves, Perez, and Ford and other HPD Defendants …used excessive force…by handcuffing N.B., or allowing her to be handcuffed."). The SAC's artful group pleading fails to allege who did what. The Supreme Court has cautioned courts in qualified immunity cases to be "alert to the possibilities of artful pleading." *Butz v. Economou*, 438 U.S. 478, 507 (1978); *accord*, *Ascon Props., Inc. v. Mobil Oil Co*., 866 F.2d 1149, 1155 (9th Cir. 1989) (citing *Butz*); *see, e.g, Armstrong v. Ashley*, 60 F.4th 262, 275 (5th Cir. 2023) ("We do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the illegal conduct is specifically pled.") (cleaned up).

---

any information about co-authors to any school authority at any time before she was arrested.

As noted above, Plaintiffs knew at the time at the time of the arrest who handcuffed N.B. Christine Neves was the only female officer, and she put the handcuffs on N.B. and drove her to the police stations. Ford and Perez did neither, and Plaintiffs cannot establish a constitutional violation of excessive force as to them merely by lumping them together in their allegations.

This is not a case where the relevant information is only in the possession of the Defendants: N.B. and her mother knew who did it. Despite the Officers' ongoing claim of qualified immunity, the district court forced them to undergo discovery and file positions statements about that forced discovery. 1-ER-81/82. The sworn interrogatory responses are clear about who handcuffed N.B. and who did not. *See* 3-ER-238/250 (Neves: "I did not use force. I used handcuffs because it is required by HPD policy while transporting an arrestee. I used the last lock on the handcuffs, which still made the cuffs too big for her, and while at the station she was able to slip them off."); 3-ER-250 (Ford: "I didn't use restrain or use handcuffs." "I didn't restrain, seclude, interrogate, or transport her."); *id*. (Perez: I did not participate in restraining, handcuffing, secluding, interrogating, arresting, or transporting her.")

The district court recognized this group pleading problem. 1-ER-15/44 ("The Second Amended Complaint does not specify the particular actions by each

officer with respect to handcuffing N.B."). But the court denied qualified immunity anyway:

> Plaintiffs, however, have alleged sufficient facts to support a claim against all of the officers for excessive force based on theories of either (1) failure to intervene or (2) as an integral participant in the excessive force. *See Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019); *Lolli v. Cnty. of Orange*, 351 F.3d 410, 417–18 (9th Cir. 2003).

This is wrong, both factually and legally. While the court stated that the SAC had alleged sufficient facts for those two theories, it did not point to any factual allegations that would support either, and there are none, apart from the general group pleading allegations directed collectively at all three Officers.

## A.    The failure to intervene and integral participant theories fail.

The court offered no legal analysis of the cases it cited. Both legal theories fail, as is clear from the Ninth Circuit's recent decision in *Peck*, 51 F.4th 877, which analyzes both theories in the excessive force context. The issue was whether three sheriff's deputies "Frey, Lind, and Carrington may be held liable for using excessive force. Those deputies did not themselves use excessive force, or indeed any force at all." *Id*. at 888. As for the duty to intervene, *Peck* stated:

> In some situations, the Constitution may impose on an officer a duty to intervene to prevent an ongoing constitutional violation. But in general, one does not subject someone to a deprivation of a constitutional right—or cause someone to be subjected to such a deprivation—simply by watching others violate the Constitution. To

be liable under section 1983, a defendant official must be more than a
mere bystander.

*Id*. at 889 (cleaned up).

The duty to intervene turns on whether the officers were integral
participants. "Under our cases, an official whose individual actions do not
themselves rise to the level of a constitutional violation may be held liable under
section 1983 only if the official is an integral participant in the unlawful act. *Id.*
(cleaned up).

*Peck* noted that the Ninth Circuit had not previously defined the minimum
level of involvement for liability under the integral-participant doctrine, but stated
that its precedents "have permitted liability in two situations: those in which (1) the
defendant knows about and acquiesces in the constitutionally defective conduct as
part of a common plan with those whose conduct constitutes the violation or
(2) the defendant sets in motion a series of acts by others which the defendant
knows or reasonably should know would cause others to inflict the constitutional
injury." *Id*. (cleaned up).

For the first situation, "simply being present at the scene does not
demonstrate that an officer has acted as part of a common plan." *Id*. For this
situation, "the Ninth Circuit has held that officers are integral participants if an
officer was aware of the decision to use the force, did not object to it, and
participated in the operation knowing the force was to be deployed." *Howell v.*

*Mun. of Anchorage*, No. 3:20-cv-00301-SLG, 2022 U.S. Dist. LEXIS 227216, at *14 (D. Alaska Dec. 16, 2022), quoting *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004) (cleaned up). "[T]he officer must have participated in either the planning or the execution of the unlawful use of force." *Id.* at *14 (citing *Peck*).

For the second situation, *Peck* discussed the same two rulings that the district court cited when denying Ford and Perez qualified immunity. *Reynaga Hernandez* "involved an arrest that was unlawfully conducted without probable cause," where "an officer who had ordered that the plaintiff be picked up was an integral participant in the unlawful arrest." 51 F.4th at 889. In that case "the plaintiff's detention was not only a reasonably foreseeable consequence but perhaps the only reasonable interpretation of the officer's order." *Id.* (cleaned up). "In other words, the officers order caused the unlawful arrest; the officer knew that the order would do so; and, because the officer had no basis for believing that there was probable cause, he also knew that the resulting arrest would be unlawful." *Id.*

*Peck* also summarized *Nicholson* as "holding an officer liable as an integral participant in an unlawfully prolonged detention because he was the initial officer who set the events into motion, and either instructed the other officers to arrest Plaintiffs or consulted with them in that decision." *Id.* at 889–90. Liability may only attach if the officer has "some fundamental involvement in the conduct that allegedly caused the violation." *Nicholson v. City of L.A.*, 935 F.3d 685, 691 (9th

Cir. 2019) (citation omitted). *Peck* also discussed a third case not cited by the district court:

> Similarly, in *Blankenhorn v. City of Orange*, we held that an officer who did not himself use excessive force but who handcuffed a suspect—and, thus, facilitated another officer's subsequent unlawful act of applying hobble restraints—was an integral participant in that use of force. Although we did not expressly discuss the defendant officer's knowledge of whether hobble restraints would be applied, the close physical and temporal connection between the defendant's act and that of the other officer made it reasonable for a jury to infer that he knew what his fellow officer was about to do and intended to facilitate it.

*Id*. at 890 (cleaned up).

None of these three cases "squarely governs" an alleged violation of "clearly established law" so as to deny Ford and Perez qualified immunity. First, unlike *Reynaga Hernandez*, the arrest of N.B. did not involve an "arrest that was unlawfully conducted without probable cause." Nor did they order "that plaintiff be picked up" (arrested). Second, unlike *Nicholson*, Ford and Perez were not "the initial officer[s] who set the events into motion, and either instructed the other officers to arrest Plaintiffs or consulted with them in that decision." Ford and Perez did not do those things, nor does the SAC allege that they did so. (*Nicholson* was a summary judgment case based on a factual record, not a motion to dismiss case.). Third, unlike *Blankenhorn*, Ford and Perez did not handcuff N.B., nor does the SAC allege that they did so, other than the group pleading allegation that all three officers did so collectively.

42

Subsequent cases have applied the *Peck* analysis to support qualified immunity. *See, e.g.*, *Roberson v. City of Hawthorne*, No. 21-55134, 2023 U.S. App. LEXIS 6872, at *3 (9th Cir. Mar. 22, 2023) (holding that Officer Lazorek is entitled to qualified immunity since he was not 'fundamentally involved in the conduct that allegedly caused the violation,' and he was not an 'integral participant' in the excessive use of force) (cleaned up, citing *Nicholson*, *Blankenhorn*, and *Peck*); *Rodriguez v. Cty. of L.A.*, No. 2:21-cv-06574-SK, 2023 U.S. Dist. LEXIS 105524, at *31 (C.D. Cal. June 13, 2023) ("It is not enough, as plaintiffs argue, that defendants may have 'set these events into motion' with no evidence that afterward 'either instructed the other officers to arrest Plaintiffs or consulted with them in that decision. Nor is it enough, as plaintiffs suggest, that their seizures should have been 'foreseeable' to defendants.") (cleaned up, citing *Nicholson* and *Peck*).

Liability for excessive force may not be imposed on Ford and Perez based on a team effort theory that would lump all the defendants together rather than requiring each individual's liability on his own conduct. *Peck*, 51 F.4th at 890. "Instead, for an official to be liable for another actor's depriving a third party of his constitutional rights, that official must have at least the same level of intent as would be required if the official were directly to deprive the third party of his constitutional rights." *Id.* (cleaned up). "Thus, the key question is whether the

43

violative nature of *particular* conduct is clearly established. Liability requires at least enough individual involvement from each defendant to put him on notice that his conduct might reasonably lead to a constitutional violation." *Id*. at 891 (cleaned up). The new *Peck* standard for integral participation is as follow:

> An actor may be deemed to have caused a plaintiff to be subjected to a constitutional violation, 42 U.S.C. § 1983, and thus to be an integral participant in the violation, only if
>
> (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a **common plan** with those whose conduct constituted the violation, or
>
> (2) the defendant **set in motion a series of acts** by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury.

*Id*. (cleaned up, emphases added).

There are no allegations in the SAC to support either of these theories against Ford and Perez. They had no "common plan" to use excessive force against N.B., nor are they alleged to have one. Nor are they alleged to have set in motion a series of acts by others to use excessive force.[22] There are no allegations that they instructed Neves to arrest and handcuff N.B., nor that they consulted with her about those actions.

---

[22] As noted above, they "did not participate in restraining, handcuffing, secluding, interrogating, arresting, or transporting her." 3-ER-238/250.

### B. *Peck*'s double causation requirement is not met.

*Peck* also established the causation requirement for integral participation, noting that "in *Reynaga Hernandez* we left open the question whether we import both proximate cause and but-for cause into our integral-participant doctrine." 51 F.4th at 890. Under the but-for causation test, "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [his or her] alleged injury would not have occurred." *Richards v. Cty. of San Bernardino*, 39 F.4th 562, 572 (9th Cir. 2022), quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).

But-for causation and proximate causation are not established because the result would have been the same even if Ford and Perez had never arrived at the school that day because they did not determine probable cause, make an arrest, or apply force. *Peck* makes clear that even if Ford and Perez "may have deviated from best practices in the actions they took…, that does not mean that they contributed to a *constitutional* violation." 51 F.4th at 892. Ford and Perez were not integral participants because they "did not form a plan, nor did they set in motion acts that they knew or should have known would cause a constitutional violation." *Id.* (cleaned up).

45

### C. Neves Is Entitled to Qualified Immunity.

The analysis of qualified immunity as to Neves is more fraught. Or not. Given that the SAC is viewed de novo on appeal, the allegations make no distinction between Neves and the other officers, and the same group pleading problem means that all three of them are entitled to qualified immunity. On the other hand, the district court informed the Officers ex ante that their motion to dismiss based on qualified immunity would be denied, and that discovery was necessary before she could rule on it. This procedure was wrong, as discussed above, and the court compounded it by requiring the filing of position statements regarding discovery.[23] The interrogatories filed by the Officers showed that Neves conducted the investigation, made the probable cause determination, handcuffed N.B., and drove her to the police station. The others did not. But those facts, specific to Neves, are nowhere to be found in the SAC. Even if they were, she would still be entitled to qualified immunity because the force she used was reasonable, and there was no clearly established law squarely governing her conduct.

---

[23] The Officers faced the ultimate Catch-22 because the court stated ex ante that it would deny the Officers' motion to dismiss based on qualified immunity until discovery had been conducted, ordered position statements regarding the discovery, and then disregarded the information revealed by the discovery that was favorable to the Officers.

The Supreme Court clarified the standards for clearly established law regarding excessive force in *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) (reversing Ninth Circuit's denial of qualified immunity). "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id*. at 1152 (citation omitted). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Id.* at 1153 (cleaned up). "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Id*. (citation omitted). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id*. (citation omitted). "That is a necessary part of the qualified-immunity standard, and it is a part of the standard that the [Ninth Circuit] Court of Appeals here failed to implement in a correct way." *Id*.

It was wrong for the district court to consider N.B. a "disabled child" regarding excessive force (1-ER-15/47) when the SAC itself alleges that her

disability (ADHD) had not been relayed to the Officers.[24] 3-ER-420 ¶ 46 ("Neither Defendant Runge nor any other Honowai staff member informed the Defendant HPD Officers about N.B.'s disability at any time that day.") and ¶ 138(d).). The discovery forced upon the Officers confirms this, with each of them stating in sworn interrogatories filed with the court that they did not know about N.B.'s disability. *See* 3-ER-238/250–251 (Neves: "I had no knowledge of any disability."); (Ford: "I had no information she had any disability."); (Perez: I was not aware of any disability.").

None of the cases cited by the district court support the denial of qualified immunity as to Neves. In *C.B. v. Sonora*, 769 F.3d 1005, 1011 (9th Cir. 2014), Chief McIntosh was told "no medicine" immediately upon arriving at the school, whereas Neves was unaware of any disability or any need for medicine. Additionally, C.B. was not arrested, nor was there probable cause to arrest her,[25] whereas N.B. was arrested with probable cause for committing terroristic threatening. She was both the instigator and the primary drafter (3-ER-420 ¶ 37) of

---

[24] Nor would N.B.'s race or disability be a factor in the probable cause analysis, given that there was probable cause to make the arrest. *See, e.g*., *Ivchenko v. City of Scottsdale*, No. 20-17463, 2021 U.S. App. LEXIS 30362, at *4 (9th Cir. Oct. 12, 2021) ("It cannot be that the ADA requires officers to refrain from arresting a disabled individual when they have established probable cause for an arrest.") (cleaned up).

[25] It is unlikely that C.B. could be subject to prosecution in California because she was under fourteen years old. *See* Cal. Pen. Code § 26.

the threatening drawing, and as such, her conduct presented a potential safety threat.[26] Unlike *Sonora*, this is not a case where there was "no justification" for the use of handcuffs. *Cf. Sonora* at 1030. Finally, regardless of whether the handcuffing N.B. was reasonable or excessive force,[27] the law is not considered clearly established so as to deny qualified immunity when the circuit courts disagree, not to mention the judges in the Ninth Circuit. *See Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017) ("The fact that the circuit courts are divided demonstrates that the law on the point is not well established."); *Fazaga v. FBI*, 965 F.3d 1015, 1060 & n.41 (9th Cir. 2020) (granting qualified immunity because "*Abbasi* controls," and citing circuit court cases that are split); *E.W. v. Dolgos*, 884 F.3d 172, 186 (4th Cir. 2018) (In contrast to the Ninth and Eleventh Circuits, "we cannot say that her seizure amounts to an 'obvious case' such that *Graham* put Dolgos on sufficient notice that her conduct

---

[26] Schools now live in a post-Uvalde world. Even a six-year-old can pose a grave danger at school. *See* https://www.cnn.com/2023/08/08/us/newport-news-student-shot-teacher-warrant/index.html (six-year-old who shot his teacher at a Virginia elementary school on January 7, 2023, later boasted that "I shot that b[ ] dead."). *See also* https://www.hawaiinewsnow.com/2023/05/25/kapolei-middle-school-placed-lockdown-after-student-brings-gun-campus (Hawaii middle school locked down after student brought a gun to school.). It is now best practice for schools and police to err on the side of caution.

[27] *Taylor v. Casarez*, No. EDCV 09-240-MMM (MAN), 2012 U.S. Dist. LEXIS 200048, at *21–22 (C.D. Cal. Aug. 17, 2012) ("Numerous federal courts have held that 'allegations of pain as a result of being handcuffed, *without some evidence of more permanent injury"* are not sufficient to establish excessive force.") (citing cases).

[in handcuffing a ten-year-old] was unlawful."); *Sonora*, 769 F.3d at 1034 (Smith and Berzon, J.J., dissenting) ("[T]he facts of this case, even when viewed in the light most favorable to C.B., do not come close to constituting an 'obvious' violation of a 'clearly established' right.") (cleaned up).

The district court also relied on <u>*Tekle v. United States*</u>, 511 F.3d 839 (9th Cir. 2007), as clearly established law (1-ER-15/47), but that case is not even remotely analogous: the facts are shocking. The eleven-year-old boy in *Tekle* was a complete innocent, at home (not at school), when the police arrived to search the home of his parents, who were suspected of narcotics trafficking and tax-related offenses. The officers knew that the boy was in the home, and when he stepped outside to take out the trash, they ordered him to turn around with his hands up. A large group of police officers made him lie face down in the driveway, held a gun to his head, handcuffed him for ten to fifteen minutes, and pulled him up from behind the chain of the handcuffs. When the cuffs were finally removed, he was placed on a stool in the driveway, where fifteen to twenty agents continued to point their guns at him. They refused the boy's request for his shoes and spat on them, making disparaging comments about the home country of his parents. *Tekle* does not "squarely govern" the conduct of Neves in the situation she faced when making an arrest for terroristic threatening.

As for the handcuffing itself, the district court cited *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) "because the officer fastened the handcuffs so tightly that they left bruises." (1-ER-15/43). But that handcuffing "caused Palmer pain and left bruises that lasted for several weeks," and the officer "refuse[d] to loosen the handcuffs after Palmer complained of the pain." *Id*. The handcuffing by Neves, by contrast, is not alleged to have caused any pain, let alone pain that lasted for weeks, and N.B. did not request that the cuffs be loosened during transport. Even if there were temporary marks on her wrist, there is no clearly established law that such marks violated the Constitution. *See Sharp v. Cty. of Orange*, 871 F.3d 901, 917 (9th Cir. 2017) ("Turning to the degree of force used,…[w]e are aware of no controlling constitutional principle or judicial precedent that is specific enough to alert Deputy Anderson that the degree of force he used in these circumstances was unreasonable. Thus, qualified immunity was warranted."); *Garcia v. Mirabal*, No. 22-35733, 2023 U.S. App. LEXIS 19069, at *4 (9th Cir. July 26, 2023) ("But even if a seizure occurred and was unreasonable, no case has clearly established that actions such as Mirabal's violated the Fourth Amendment."), citing *White v. Pauly*, 580 U.S. 73, 79 (2017).

## CONCLUSION

The Appellant Officers are entitled to qualified immunity. This Court should reverse and remand with instructions to dismiss the federal claims against them.

DATED:  Honolulu, Hawai'i, September 25, 2023.

DANA M. O. VIOLA
Corporation Counsel

By:  /s/ Robert M. Kohn
ROBERT M. KOHN
PAUL S. AOKI
Deputies Corporation Counsel

Attorneys for Defendants-Appellants

52

## STATEMENT OF RELATED CASES

Appellants are not aware of any related cases pending before this Court.

DATED:  Honolulu, Hawai‘i, September 25, 2023.

DANA M. O. VIOLA
Corporation Counsel

By:  /s/ Robert M. Kohn
      ROBERT M. KOHN
      PAUL S. AOKI
      Deputies Corporation Counsel

      Attorneys for Defendants-Appellants

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____23-15507_____

I am the attorney or self-represented party.

**This brief contains** _____12,804_____**words,** including __0____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

**[X]** complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __s/ Robert M. Kohn_____ **Date** _____9/25/2023_____
  *(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                           *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** _____ 23-15507 _____

[**X**] I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[  ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are __NOT__ Registered for Electronic Filing:**
[  ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellants' Opening Brief

**Signature** __s/ Robert M. Kohn_____ **Date** _____9/25/2023_____
 *(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 15** *Rev. 12/01/18*